<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, | |
| Plaintiff, | Civil Action No. 16-258 (MCA) (MAH) |
| v. | |
| SHERRY CHELCHOWSKI, ET AL., | OPINION |
| Defendants. | |

## I. INTRODUCTION

This matter comes before the Court on Defendant/Cross-Claimant Sherry Chelchowski's ("Chelchowski") Motion for Leave to File an Amended Cross-Claim. <u>See</u> Mot. to Amend, D.E. 65. Chelchowski seeks to amend her cross-claim to add a claim of defamation against Defendant/Cross-Claimant Christopher B. Hoffman ("Christopher") based on Christopher's December 1, 2015 letter to Plaintiff Prudential Insurance ("Prudential"), which expressed Christopher's belief that Chelchowski had forged a life-insurance beneficiary form. <u>See</u> Prop. Am. Cross-Claim. ¶24-24, Exh. to Mot. to Amend, D.E. 65-1. Christopher opposes the motion. Christopher argues that he made the statement in anticipation of this litigation, and that the statement therefore is protected by the litigation privilege exception to defamation claims. Opp'n Ltr. Br., D.E. 67.

Pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1, the Court decided this motion without oral argument. For the reasons set forth below, the Court will grant Chelchowski's motion.

**II.     BACKGROUND**

Prudential issued a group life insurance policy to JP Morgan Chase Bank, as the Trustee of the American Institute of Certified Public Accountants Insurance Trust (the "Group Policy"). Compl. for Interpleader ¶8, D.E. 1.  In 1999, Joseph Sienkiewicz elected to become insured by the Group Policy, and named his spouse, Margaret McKenzie, as the beneficiary.  See Opp'n Ltr. Br. at 1-2, D.E. 67.  On or about, March 21, 2001, Sienkiewicz filed a change of beneficiary form that designated Chelchowski as his beneficiary, and identified her as his wife.  Compl. for Interpleader ¶10, D.E. 1.  It is undisputed that Sienkiewicz and Chelchowski never married. According to Chelchowski, she and Sienkiewicz were involved in a fifteen-year relationship, during which they lived together.  Prop. Am. Cross-Claim, D.E. 19, ¶10.  Chelchowski acknowledges that she and Sienkiewicz stopped living together in 2013, but maintains that "they remained fond of each other, and amicably communicated including on August 11, 2015, less than a month before he died."  Id.  ¶11.

Sienkiewicz died on September 9, 2015. Compl. for Interpleader, D.E. 1, ¶11.  At the time of his death, Sienkiewicz was unmarried and had no children.  Id. ¶12.

The surviving family members who are now parties to this action include Sienkiewicz's nephews, Christopher B. Hoffman ("Christopher") and Kenneth J. Hoffman III ("Kenneth"), and Sienkiewicz's brother, Kenneth J. Hoffman ("Kenneth J.").  Id. ¶¶3-5.  Kenneth J. also is the personal representative of Sienkiewicz's Estate and the Administrator of the Estate.  Id. ¶5 & Ex. A.  Chelchowski and the three Hoffman relations (collectively "the Hoffman Defendants") are all named as putative beneficiaries in this action.  Compl. for Interpleader ¶¶2-5, D.E. 1.

On October 8, 2015, Chelchowski submitted a claim for Sienkiewicz's death benefits under the Group Policy. Id. ¶15.   The Group Policy states that "[i]f there is a Beneficiary for the

2

insurance, it is payable to that Beneficiary." Id. ¶14. After Sienkiewicz's death, however, Prudential "received numerous letters from [Sienkiewicz's] surviving family members contesting the payment of the Death Benefit to [Chelchowski] and alleging, *inter alia,* the March 21, 2001 beneficiary designation was forged." Id. ¶16.

On January 14, 2016, Prudential filed this action by Interpleader Complaint against the Hoffman Defendants and Chelchowski. Compl. for Interpleader, D.E. 1. The Hoffman Defendants and Chelchowski filed Answers to the Interpleader Complaint and Cross-Claims against each other. D.E. 19, 26. Both the Hoffman Defendants and Chelchowski claim to be the rightful beneficiary of the Sienkiewicz Death Benefit under the Prudential Policy.

On November 22, 2016, Chelchowski filed the present motion seeking to amend her cross-claim to add a defamation claim against Christopher. Mot. to Amend, D.E. 65. Chelchowski's claim is based on a letter that Christopher sent to Prudential on or about December 1, 2015. In that letter, Christopher related to Prudential his belief that Chelchowski had forged the beneficiary form. The letter stated in pertinent part:

> This letter is in addition to the previously sent letter marked November 8, 2015. I am currently having this matter reviewed by my attorney. Things are not moving as fast as anticipated due to the holiday delays. Upon further review of the original signed life insurance policy agreement, we have reason to believe that the signature was forged and filled out by the current named recipient on the policy, Sherry Chelchowski. I ask that you grant us more time to secure further evidence and legal advice. As soon as my lawyer has fully reviewed the information I will have a letter directly sent from him/her to prove such action is occurring.

Prop. Am. Cross-Claim, D.E. 65-1, ¶¶28-30 & Ex. E.

In Christopher's deposition, he stated that he believed the signature was forged because "[i]t didn't look like his signature, and it didn't look like his handwriting either." Motion to Amend, D.E. 65-1, Ex. F at 29. The Hoffman Defendants also note that Sienkiewicz was involved in a "near fatal motor vehicle accident" four months before the change of beneficiary form was

3

filed, and that he suffered from "cerebral concussion with brief loss of consciousness" and "frontal lobe contusion," among other serious injuries. Opp'n Ltr. Br., D.E. 67, at 2. Sienkiewicz had to undergo multiple surgeries as a result. Id.

Chelchowski alleges that Christopher made his December 1, 2015 forgery allegation to Prudential "with reckless regard for the truth or falsity of the statement," noting that he failed to "consult with a forensic handwriting expert or consultant prior to accusing [Chelchowski] of forgery." Prop. Am. Cross-Claim, D.E. 65-1, ¶36; Br. in Supp. of Mot., D.E. 65-2, at 7. Chelchowski further alleges that she has suffered "physical damages" in the form of "sleeplessness, stress, humiliation, and anxiety" as well as "legal expenses associated with the Interpleader Action." Prop. Am. Cross-Claim, D.E. 65-1, ¶44. Chelchowski denies "committing any act of forgery whatsoever." Id. ¶45.

Christopher opposes the motion on futility grounds. Opp'n Ltr. Br., D.E. 67. He argues that the December 1, 2015 statement to Prudential is protected by the litigation privilege because he made it in anticipation of the current litigation. Id. at 4-7.

### III. DISCUSSION

Under Fed. R. Civ. P. 15, a party may amend the complaint once as of right, and "courts may grant subsequent amendments 'when justice so requires.'" Fraser v. Nationwide Mut. Ins. Co., 352 F.3d 107, 116 (3d Cir. 2003) (quoting Fed. R. Civ. P. 15(a)). The Court may deny leave to amend the pleadings only where there is (1) undue delay, (2) bad faith or dilatory motive, (3) undue prejudice, (4) repeated failures to cure deficiencies, or (5) futility of amendment. Foman v. Davis, 371 U.S. 178, 182 (1962); Long v. Wilson, 393 F.3d 390, 400 (3d Cir.2004) ("We have held that motions to amend pleadings [under Rule 15(a)] should be liberally granted.") (citations

omitted); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir.2002). Here, Christopher argues that the Court should deny Chelchowski's motion for leave to file an Amended Cross-Claim because of the futility of the proposed amendment adding a claim of defamation. Opp'n Ltr. Br. at 4, D.E. 67. Because Christopher does not argue that there is undue delay, bad faith, undue prejudice, or repeated failure to cure deficiencies, the Court will base its determination on whether to grant the motion to amend solely on whether it would be "futile" to allow the proposed new claim to proceed. See Assadourian v. Harb, 2008 WL 4056361, at *3 (D.N.J. 2008) ("The futility of amendment, or the failure of the plaintiff to articulate a claim, may also serve as a basis for denying a motion to amend.").

A court will consider an amendment futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face." Harrison Beverage Co. v. Dribeck Imps., Inc., 133 F.R.D. 463, 468 (D.N.J. 1990) (citations omitted) (internal quotations marks omitted). To determine whether an amendment is insufficient on its face, the Court employs the standard applied to Rule 12(b)(6) motions to dismiss. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). Under this standard, the question before the Court is not whether the movant will ultimately prevail, but whether the complaint sets forth "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (establishing that a "court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations"); Harrison Beverage, 133 F.R.D. at 468 ("'Futility' of amendment is shown when the claim or defense is not accompanied by a showing of plausibility sufficient to present a triable issue."). A two-part analysis determines whether this standard is met. Fowler, 578 F.3d at 210 (citing Ashcroft v. Iqbal, 556 U.S. 662, 629 (2009)).

First, a court separates the factual and legal elements of a claim. <u>Fowler</u>, 578 F.3d at 210. All well-pleaded facts set forth in the pleading and the contents of the documents incorporated therein must be accepted as true, but the Court may disregard legal conclusions. <u>Id.</u> at 210–11; <u>West Penn Allegheny Health Sys., Inc. v. UPMC</u>, 627 F.3d 85, 97 n. 6 (3rd Cir.2010); <u>see also</u> <u>Iqbal</u>, 556 U.S. at 678 (noting that a complaint is insufficient if it offers "labels and conclusions," a "formulaic recitation of the elements of a cause of action," or "naked assertions" devoid of "further factual enhancement") (alterations omitted) (internal quotations marks omitted).

Second, as stated above, a court determines whether the plaintiff's facts are sufficient "to state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570. As the Supreme Court instructed in <u>Iqbal</u>, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. at 678. The plausibility standard is not a "probability requirement," but the well-pleaded facts must do more than demonstrate that the conduct is "merely consistent" with liability so as to "permit the court to infer more than the mere possibility of misconduct." <u>Id.</u> at 678–79 (citations omitted) (internal quotation marks omitted). This "context-specific task ... requires the reviewing court to draw on its judicial experience and common sense." <u>Id.</u> at 679.

New Jersey courts have identified three elements to a claim of defamation: "(1) the assertion of a false and defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault amounting at least to negligence by the publisher." <u>Leang v. Jersey City Bd. of Educ.</u>, 198 N.J. 557, 585 (2009) (quoting <u>DeAngelis v. Hill</u>, 180 N.J. 1, 13 (2004)). "A defamatory statement, generally, is one that subjects an individual to contempt or ridicule, one that harms a person's reputation by lowering the community's estimation of him or by deterring others from wanting to associate or deal with him." <u>G.D. v. Kenny</u>, 205 N.J. 275, 293

6

(2011) (citations omitted). A Court determining whether a statement is defamatory should evaluate "the fair and natural meaning which will be given it by reasonable persons of ordinary intelligence." Romaine v. Kallinger, 109 N.J. 282, 290 (1988) (quotations omitted). The New Jersey Supreme Court, however, has specifically acknowledged that "[a] statement falsely attributing criminality to an individual is defamatory as a matter of law." G.D., 205 N.J. at 293.

In Chelchowski's proposed amendment, she alleges that Christopher "falsely asserted that [Chelchowski] forged the 2001 Beneficiary Designation form." Prop. Am. Cross-Claim ¶29. Chelchowski further claims that this statement "caused harm to [her] reputation and good character" and "caused Prudential to view her in a lesser light, doubt her credibility, and amounts to an allegation of criminality." Id. ¶¶30, 43. Furthermore, Chelchowski alleges that Christopher made the statement "with knowledge that it was false, and with reckless disregard for the truth or falsity of the statement, as well as with negligence." Id. ¶36. She notes that Christopher failed to consult with a "handwriting expert or forensic document examiner, and he had no handwriting analysis experience of his own." Id. ¶40. Chelchowski also claims that Christopher's statement has caused her "physical damages in the form of sleeplessness, stress, humiliation, and anxiety," as well as financial damages in the form of "legal expenses associated with the Interpleader Action." Id. ¶¶42, 44.

Those allegations meet each of the three elements to a claim of defamation under New Jersey law. See Leang, 198 N.J. at 585. Accordingly, the Court concludes that Chelchowski's proposed claim of defamation sets forth "enough facts to state a claim to relief that is plausible on its face."[1] See Twombly, 550 U.S. at 570.

---

[1] The Court takes no position at this time on whether Chelchowski ultimately will be able to prove the allegations underlying her claim. Similarly, the Court takes no position on whether she will be able to establish the damages she claims to have suffered as a result of the

7

Christopher's principal opposition to the motion is based on futility. He contends that the Court should deny the motion to amend because his alleged statement to Prudential is protected by the litigation privilege. A statement "made in the course of judicial, administrative, or legislative proceedings is absolutely privileged and wholly immune from liability." Erickson v. Marsh & McLennan Co., 117 N.J. 539, 563 (1990) (citation omitted). The privilege may even apply to statements made in anticipation of litigation. See Hawkins v. Harris 141 N.J. 207, 216 (1995) (finding that "litigation privilege is not limited to statements made in a courtroom during a trial; it extends to all statements or communications in connection with the judicial proceeding").

It may be that Christopher's December 1, 2015 letter qualifies for the litigation privilege. However, in a Rule 15 analysis, the Court examine the sufficiency of the proposed amendment. Twombly, 550 U.S. at 570; Iqbal, 556 U.S. at 678. Nothing in Chelchowski's proposed pleading suggests, much less concedes, that Christopher made the statement in anticipation of litigation. See Hauptmann v. Wilentz, 570 F. Supp. 351, 363 n. 4 (D.N.J. 1983) (explaining that an affirmative defense "may be handled under Rule 12(b), without resort to summary judgment procedure, if the defense appears on the face of the complaint").

Additionally, to qualify the forgery allegation as privileged, Christopher will have to establish that he made the statement in anticipation of litigation. The litigation was not filed until January 14, 2016, more than one month after he sent the letter to Prudential. Further, Christopher did not initiate the lawsuit; Prudential did. Accordingly, there are factual issues that the parties will need to explore in discovery in order to substantiate or disprove the assertion that Christopher

---

defamation, or that those damages were caused by the alleged defamation, as opposed to the Interpleader litigation. Those considerations are not properly part of the Court's analysis under Rule 15, where the Court is constrained to accept the well pleaded allegations as true. Fowler, 578 F.3d at 210-11.

made the statement in anticipation of litigation.  The absence of any admission in the proposed amendment, as well as those open fact issues, preclude any finding at this time that Christopher's statement qualifies for the litigation privilege.  In short, because the statement was made over a month before Prudential filed the Complaint for Interpleader, and it is not apparent on the face of Chelchowski's proposed amendment that Christopher's statement was made "in connection with" or "in the course of judicial, administrative, or legislative proceedings[,]" there is no basis at this time to deny the amendment on futility grounds.  See Erickson, 117 N.J. at 563; Hawkins, 141 N.J. at 216.

Based on the facts alleged in the Proposed Amended Cross-Claim, the Court concludes that Chelchowski's proposed claim for defamation sets forth "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.  Therefore, Chelchowski's motion to amend the cross-claim [D.E. 65] to add a claim of defamation against Christopher Hoffman is granted.

*s/ Michael A. Hammer*
**United States Magistrate Judge**

Dated:  March 10, 2017