NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, | |
| Plaintiff, | Civil Action No. 16-258 (MCA) (MAH) |
| v. | OPINION |
| SHERRY CHELCHOWSKI, ET AL., | |
| Defendants. | |

## I. INTRODUCTION

This matter comes before the Court on Defendant/Cross-Claimant Sherry Chelchowski's Motion to Disqualify The Maglione Firm, PC, as counsel for Defendant/Cross-Claimants Christopher B. Hoffman and Kenneth J. Hoffman, III. See Mot. to Disqualify, D.E. 60, 61.

Pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1, the Court decided this motion without oral argument. For the reasons set forth below, the Court will deny Chelchowski's motion to disqualify.

## II. BACKGROUND

Prudential issued a group life insurance policy to JP Morgan Chase Bank, as the Trustee of the American Institute of Certified Public Accountants Insurance Trust (the "Group Policy"). Compl. for Interpleader ¶8, D.E. 1. In 1999, Joseph Sienkiewicz elected to become insured by the Group Policy, and named his spouse, Margaret McKenzie, as the beneficiary. See Opp'n Ltr. Br. at 1-2, D.E. 68. On or about, March 21, 2001, Sienkiewicz filed a change of beneficiary form

1

which designated Sherry Chelchowski ("Chelchowski") as his beneficiary. Compl. for Interpleader ¶10, D.E. 1. According to Chelchowski, she and Sienkiewicz were involved in a fifteen-year relationship, during which they lived together. Am. Cross-Claim ¶10, D.E. 80,. Chelchowski acknowledges that she and Sienkiewicz stopped living together in 2013, but maintains that "they remained fond of each other, and amicably communicated including on August 11, 2015, less than a month before he died." Id. ¶11.

Sienkiewicz died on September 9, 2015. Compl. for Interpleader ¶11. At the time of his death, Sienkiewicz was unmarried and had no children. Id. ¶12.

The surviving family members who are now parties to this action include Sienkiewicz's nephews, Christopher B. Hoffman and Kenneth J. Hoffman III ("the Nephews"), and Sienkiewicz's brother, Kenneth J. Hoffman ("Administrator Hoffman"), who is now the personal representative of Sienkiewicz's Estate (collectively "the Hoffman Defendants"). Id. ¶¶3-5. Chelchowski, the two Nephews, and Administrator Hoffman, in his capacity as personal representative of the Estate, are all named as putative beneficiaries in this action. Compl. for Interpleader ¶¶2-5, D.E. 1.

On October 8, 2015, Chelchowski submitted a claim for Sienkiewicz's death benefits under the Group Policy. Id. ¶15. The Group Policy states that "[i]f there is a Beneficiary for the insurance, it is payable to that Beneficiary." Id. ¶14. After Sienkiewicz's death, however, Prudential "received numerous letters from [Sienkiewicz's] surviving family members contesting the payment of the Death Benefit to [Chelchowski] and alleging, *inter alia,* the March 21, 2001 beneficiary designation was forged." Id. ¶16. Administrator Hoffman also claims to have found a new change of beneficiary form, dated August 7, 2015, which named his sons, the Hoffman Nephews, as beneficiaries to the Prudential life insurance policy. Admin. Hoffman Cert. ¶13, D.E.

68-2.

On January 14, 2016, Prudential filed this action by Interpleader Complaint against Chelchowski, the Hoffman nephews, and Administrator Hoffman, in his capacity as representative of the Estate. Compl. for Interpleader, D.E. 1. The three Hoffman Defendants and Chelchowski filed Answers to the Interpleader Complaint and Cross-Claims against each other. D.E. 19, 26. The Hoffman nephews and Chelchowski both claim to be the rightful beneficiary of the Sienkiewicz Death Benefit under the Prudential Policy.

Administrator Hoffman is not challenging the validity of the 2015 beneficiary form, "because he believes it was executed by his late brother, Joseph Sienkiewicz, and he wished to abide by Mr. Sienkiewicz's wishes and let the Nephews claim the death benefit of the subject policy." Certification of Dean Maglione ("Maglione Cert.") ¶19, D.E. 68-1. Despite his position as to the validity of the 2015 beneficiary form, Administrator Hoffman still has an interest in Prudential insurance proceeds, because if neither the 2001 or the 2015 form is deemed to be valid, the proceeds will revert to the Estate, for which he is the personal representative. Id. ¶20.

At the beginning of this litigation, the Hoffman Nephews and Administrator Hoffman sought to retain the Maglione Firm to "represent their interests in claiming the death benefit of the subject insurance policy." Id. ¶21. At this point, The Maglione Firm, through its principal Dean Maglione, claims to have "fully explained to Administrator Hoffman and the Nephews the consequences of dual representation and advised both parties that should their interests become adverse in the future, and the Estate decides to bring a claim against the Nephews, we may need to recuse ourselves in the future." Id. ¶22; see also Admin. Hoffman Cert. ¶22. The Nephews and Administrator Hoffman informed the Maglione Firm that they "understood the consequences and waived any potential conflict," and proceeded to formally retain the Maglione Firm to represent

both of their interests in the litigation. Maglione Cert. ¶23; see also Admin. Hoffman Cert. ¶22.

In September 2016, Chelchowski's attorney, Deborah Bryant, wrote to the Court seeking permission to file a motion to disqualify the Maglione Firm based upon New Jersey Rule of Professional Conduct 1.7, which prohibits concurrent representation of parties with adverse interests. See Ltr. to Court, September 15, 2016, D.E. 50.

Upon consideration of Chelchowski's intention to move to disqualify, Dean Maglione advised the Hoffman Nephews and Administrator Hoffman of the situation and again explained the potential conflicts of interest between the Estate and the Nephews and any adverse consequences which could result from dual representation. See Maglione Cert. ¶46; see also Admin. Hoffman. Cert. ¶29. That conversation was thereafter memorialized in a letter dated October 10, 2016, and sent to the Hoffmans. See Ltr. to Hoffmans, Exh. D. to Maglione Cert., D.E. 68-1. The letter also included waivers of any potential conflict, which each of the Hoffmans executed, in writing, on October 17, 2016. Id. Shortly thereafter, the Estate voluntarily decided to retain separate counsel, and on October 21, 2016, Randy Davenport, Esq. filed a substitution of attorney form, and took over representation of the Estate. D.E. 58. Nevertheless, on November 10, 2016, Chelchowski proceeded to file this motion to disqualify presently before the Court. D.E. 61.

### III.    DISCUSSION

Issues of professional ethics in the District Court of New Jersey are governed by L.Civ. R. 103.1(a). See Carlyle Towers Condo. Ass'n v. Crossland Sav., FSB, 944 F. Supp. 341, 344 (D.N.J. 1996). That Rule provides that "the Rules of Professional Conduct of the American Bar Association as revised by the New Jersey Supreme Court shall govern the conduct of the members

of the bar admitted to practice in this Court the Rules of Professional Conduct." See L.Civ. R. 103.1(a). "Thus, to resolve questions of professional ethics, this Court turns to New Jersey's Rules of Professional Conduct." Carlyle Towers Condo., 944 F. Supp. at 345.

"In an application for attorney disqualification…the party who brings a disqualification motion, based on an attorney's successive representations, bears the burden of proving that disqualification is appropriate." Ciba-Geigy Corp. v. Alza Corp., 795 F. Supp. 711, 714. The burden is considered especially heavy because, in this District, "[m]otions to disqualify are viewed with 'disfavor' and disqualification is considered a 'drastic measure which courts should hesitate to impose except when absolutely necessary.'" Alexander v. Primerica Holdings, Inc., 822 F.Supp. 1099, 1114 (D.N.J. 1993) (quoting Schiessle v. Stephens, 717 F.2d 417, 420 (7th Cir. 1983) (internal quotation marks and citation omitted)).

Such disfavor results from the reality that motions to disqualify are sometimes made solely for "tactical reasons," and that even when they are made in good faith, motions to disqualify cause inevitable delay in the underlying proceedings and create added hardships to the opposing party. Carlyle Towers Condo., 944 F. Supp. at 345 (citing Dewey v. R.J. Reynolds Tobacco Co., 109 N.J. 201, 218 (1988)); see also Cohen v. Oasin, 844 F. Supp. 1065, 1067 (E.D. Pa. 1994) (warning that the Rules of Professional Conduct are not indented to be used as a "procedural weapon.")

In this case, Chelchowski argues that disqualification is warranted under R.P.C. 1.7, which provides that "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest." The Rule explains that a concurrent conflict of interest exists if "the representation of one client will be directly adverse to another client." Id. It is readily apparent from the plain language of the statute that R.P.C. 1.7 is not applicable to the case at bar, because the Maglione Firm is no longer undertaking concurrent representation of the Nephews and

5

Administrator Hoffman. On October 21, 2016, Randy Davenport filed a substitution of attorney form on behalf of the Estate and the Maglione Firm ceased representing the Estate. D.E. 58. Therefore, Rule 1.7 does not apply and the Court should look to R.P.C. 1.9 which governs successive representation of clients with adverse interests.

R.P.C. 1.9 provides: "A lawyer who has represented a client in a matter shall not thereafter represent another client in the same or a substantially related matter in which that client's interests are materially adverse to the interests of the former client unless the former client gives informed consent confirmed in writing." "Three elements are necessary in order to create a conflict of interest under R.P.C. 1.9(a): (1) a former client whom the lawyer represented in a matter; (2) a current client whose interests are materially adverse to those of the former client; and (3) a current matter that is the same as or substantially related to the matter in which the lawyer represented the former client." City of Atlantic City v. Trupos, 201 N.J. 447, 455 (2010). However, even if all three elements are satisfied, a conflict is waivable so long as the former client gives "informed consent confirmed in writing."

To begin, it is not readily apparent that the interests of the Estate and the Nephews are "materially adverse." Chelchowski argues that the interests of the Estate and the Nephews are materially adverse because both parties are seeking the "same pot of money." Br. in Supp. of Mot. at 11. She writes:

> Simply put, they are adversarial because they are each separately seeking to obtain the same life insurance proceeds to the exclusion of the other. The Estate claims that the proceeds revert to the Estate because no valid beneficiary form are on file with Prudential and like Ms. Chelchowski, the Estate should be asserting that the decedent did not substantially comply with the policy's requirement for changing the beneficiary designation. In contrast, the Nephews assert they are entitled to the policy proceeds because of a 2015 Change of Beneficiary Form designating them as the beneficiaries.

6

Id. at 10, D.E. 61.

Chelchowski's characterization of this conflict is problematic because it is largely based on her own speculation. While it would be within the Estate's rights to challenge the validity of the 2015 Change of Beneficiary Form, the reality is that the Estate has chosen not to do so. The cross-claim which was jointly filed by the Estate and the Nephews against Chelchowski asserts that the Nephews are "entitled to this policy benefits." Cross-Claim ¶38, D.E. 26. The Estate only asserts that it is entitled to the proceeds "in the alternative" if the 2015 change of beneficiary form is not deemed to be valid. Id. ¶40. Furthermore, Administrator Hoffman stated in a certification in support of opposition to this motion, that he has "no reason to doubt the authenticity of the 2015 change of beneficiary form" and that he "will not file any cross-claims against my sons…to challenge their right to the death benefit." Admin. Hoffman Cert. ¶¶32, 39. Therefore, although it is possible that the interests of the Estate and will become adverse in the future, it is merely a hypothetical scenario at this point, and insufficient to convince the Court to disqualify counsel. See McCarthy v. Hendersen 246 N.J. Super. 225 (App. Div. 1991) (reversing the trial court's order disqualifying counsel when the "facial appearance of conflict [was] no more than a fanciful possibility without any reasonable basis.")

Furthermore, even if the interests of the affected parties were "materially adverse," such a conflict can be waived pursuant to R.P.C. 1.9(a) so long as the former client gives "informed consent confirmed in writing." R.P.C. 1.0 states that informed consent "denotes that the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct." Informed consent must be "knowing, intelligent and voluntary." In re Dolan, 76 N.J. 1, 13 (1978). The attorney is required to "provide meaningful consultation to

7

the client about potential conflicts." Celgene Corp. v. KV Pharm. Co., 2008 U.S. Dist. LEXIS 58735 at *13-14 (D.N.J. 2008). New Jersey Supreme Court's Advisory Committee on Professional Ethics has also advised that proper consultation "will include an explanation of the implications of the proposed representation, including both its risks and advantages." N.J. Supreme Ct. Advis. Comm. on Prof. Ethics, Opinion 679 (1995). For example, in a case before this Court, a law firm's representation of a client in a patent litigation against another of the law firm's clients required disqualification despite the firm's production on waiver forms, which the affected client had signed. See Celgene Corp, 2008 U.S. Dist. LEXIS 58735. The Court determined that the waiver forms were insufficient to defeat disqualification because they were "so general" and "propose[d] a future course of conduct that [was] very open-ended and vague." Id. at * 23. The Court also noted that the law firm failed to communicate to its client "adequate information or explanation about the risks of the proposed course of conduct" or the possibility of "available alternatives." Id.

The waiver provided in this case easily passes muster. In a letter dated October 10, 2016, which memorialized a prior verbal conversation, Dean Maglione explained the risks of the dual representation and gave the Hoffmans a reasonable opportunity to seek advice of independent counsel. See Ltr. to Hoffmans, Exh. D to Maglione Cert., D.E. 68-1. The letter was not vague or general, but was rather detailed and specific to the facts of the current litigation. Id. Administrator Hoffman signed the waiver form on October 17, 2017. Id. Although he ultimately decided to retain new counsel a few days thereafter, Administrator Hoffman has since submitted a new waiver dated December 5, 2016 in the form of a certification in support of opposition to Chelchowski's motion to disqualify. See Admin. Hoffman Cert. The certification recounts prior conversations between Maglione and Administrator Hoffman, in which Maglione "fully explained" the risks of

8

representing the Nephews in this case. Id. ¶22. Administrator Hoffman also notes that he has consulted with his new attorney, Randy Davenport, in making the decision to waive any potential conflict of interest in this case relating to the Maglione Firm's representation of the Nephews. Id. ¶30-32, 40. The certification therefore demonstrates a "knowing, intelligent and voluntary" waiver. See In re Dolan, 76 N.J. at 13.

Because the Maglione Firm has demonstrated that Administrator Hoffman provided "informed consent confirmed in writing," agreeing to its representation of the Nephews in this litigation, disqualification is not appropriate under R.P.C. 1.9, and Chelchowski's motion is denied.

## IV. CONCLUSION

For the foregoing reasons, Defendant/Cross-Claimant Sherry Chelchowski's Motion to Disqualify The Maglione Firm, PC, as counsel for Defendant/Cross-Claimants Christopher B. Hoffman and Kenneth J. Hoffman [D.E. 60, 61] is **DENIED.**

*s/ Michael A. Hammer*
**UNITED STATES MAGISTRATE JUDGE**

Dated: April 28, 2017